Name _AUSA Julia L. Reese_

Address _312 N.Spring Street, Suite 1200_

City, State, Zip _Los Angeles, CA 90012_

Phone _(213) 894-6681_

Fax _(213) 894-0141_

E-Mail _julia.reese@usdoj.gov_

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☐ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | CASE NUMBER: |
|---|---|
| PLAINTIFF(S), | SACR 16-0029-CJC |
| v. | |
| JUSTIN MARQUES HENNING | **NOTICE OF APPEAL** |
| DEFENDANT(S). | |

NOTICE IS HEREBY GIVEN that _____ United States of America _____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**                                    **Civil Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]          ☒ Order (specify):
☐ Conviction and Sentence                          Minutes and Order Granting Acquittal CR No. 1125 & 1126 -- Filed 12/20/2017
☐ Sentence Only (18 U.S.C. 3742)                   Order dismissing Indictments CR No. 1130 -- Filed 12/22/2017
☐ Pursuant to F.R.Cr.P. 32(j)(2)                   ☐ Judgment (specify):
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:                                     ☐ Other (specify):

Imposed or Filed on ___12/22/2017___ . Entered on the docket in this action on _12/22/2017_____ .

A copy of said judgment or order is attached hereto.

___01/09/2018___                    _/s/ Julia L. Reese_____
Date                                Signature
                                    ☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:**   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | SACR 16-00029-CJC-7 | Date | December 20, 2017 |
|---|---|---|---|

| Present: The Honorable | CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE |
|---|---|

| Interpreter | None |
|---|---|

| Melissa Kunig | Debbie Hino-Spaan | Scott Tenley; Julia Reese; Jeffrey Chemerinsky |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 7) Justin Marques Henning | X | X | | 7) James Tedford (CJA) | | | |
| | | | | 5) Matthew Fletcher (CJA) (counsel for Robert Wesley Johnson) | X  X | X  X | |

PROCEEDINGS:     DEFENDANT JUSTIN HENNING'S MOTION FOR ACQUITTAL [1086]

    Motion hearing held. The Court hears oral argument from the parties.   For the reasons stated on the record, the Court **GRANTS** Defendant Justin Henning's Motion for Acquittal [1086]. Defendant Henning is ordered to be released forthwith.   Release Order # 18676.

|  | 0 | : | 45 |
|---|---|---|---|

Initials of Deputy Clerk    mku

cc:   **USPO**
     **PSA**



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br><br>JUSTIN MARQUES HENNING,<br><br>            Defendant. | Case No.: SACR 16-00029-CJC<br><br>**ORDER GRANTING DEFENDANT HENNING'S MOTION FOR A JUDGMENT OF ACQUITTAL** |

## I.  INTRODUCTION

On September 22, 2017, after a four-week trial, a jury found Defendant Justin Marques Henning guilty of the following charges:  (1) aiding and abetting or conspiring with others to commit Hobbs Act robbery at Ben Bridge Jeweler in Torrance, California

("the Del Amo robbery"); (2) aiding and abetting or conspiring with others, who knowingly brandished a firearm during and in relation to the Del Amo robbery; and (3) conspiracy to commit Hobbs Act robbery.  Henning now moves to set aside the jury's guilty verdict for conspiracy, robbery, and brandishing a firearm, arguing that there was insufficient evidence to support that verdict.  The Government opposes Henning's motion, contending that Henning's presence at two planning meetings for the Del Amo robbery, his presence in the general vicinity of the robbery, his affiliation with those involved in that robbery, and his knowledge that the robbery was going to occur are sufficient to support the jury's guilty verdict.  The Court disagrees with the Government. Mere presence, affiliation and knowledge are not sufficient to prove guilt beyond a reasonable doubt.  More evidence is needed to support a criminal conviction for conspiracy, robbery, or brandishing a firearm.  Specifically here, the Government was required to present evidence that Henning said or did something to prove that he intentionally participated or joined in the conspiracy, or said or did something to prove that he knowingly aided and abetted the Del Amo robbery at which a firearm was brandished.  Because the Government failed to present such evidence, the Court must set aside the jury's guilty verdict and enter a judgment of acquittal on all three counts.

## II.  BACKGROUND

The operative Third Superseding Indictment charged Henning with conspiracy to commit Hobbs Act robbery (Count One), four counts of Hobbs Act robbery (Counts Two [Rolex Boutique Geary's, Los Angeles], Six [Manya Jewelry, Woodland Hills], Nine [Westime, West Hollywood], and Eleven [Ben Bridge Jeweler, Torrance]), and two counts under 18 U.S.C. § 924(c) with brandishing enhancements (Counts Ten [Westime, West Hollywood] and Twelve [Ben Bridge Jeweler, Torrance]).  (Dkt. 537.)  The grand jury returned Henning's indictment along with indictments for several co-defendants who were charged with similar counts.  The charges arose from a series of "smash and grab"

robberies that occurred at jewelry stores across Southern California.  After a four-week jury trial, the jury convicted Henning of the three counts pertaining to the Del Amo robbery (Counts One, Eleven, and Twelve), and acquitted Henning of all other counts.

Viewed in the light most favorable to the Government, evidence at trial showed the following related to Henning and the Del Amo robbery:

On February 26, 2016, Robert Johnson, Jameson LaForest, Evan Scott, Michael Germeille, Cornell Stephen, and Wilson Elima met at Morningside Park in Inglewood, California.  (Dkt. 1045 [Transcript 8/23/17 Vol. I] at 38, 42; Dkt. 1046 [Transcript 8/29/17 Vol. I] at 99, 114.)  Elima testified at trial that Henning was present at this meeting, (Transcript 8/23/17 Vol. I at 38, 42), but Stephen testified that Henning was not present, (Transcript 8/29/17 Vol. I at 99, 114).

During this meeting, Johnson discussed the robbery of Ben Bridge Jeweler at the Del Amo mall in Torrance.  (Transcript 8/23/17 Vol. I at 38.)  Johnson assigned the following roles for the robbery: Elima would be the getaway driver, Scott would be the gunman, and Stephen, with another man named Shane Lewis, would smash the glass cases in the store.  (*Id*. at 38–39.)  Elima testified that Henning was present for the entire meeting, but said nothing during the meeting.  (*Id*. at 41.)  At some point, Elima was told that Johnson assigned Henning the role of "emergency pick up."  (*Id*.)  Elima testified that that an "emergency pick up" would be used if something happened to the getaway driver during the robbery.  (Dkt. 923 [Transcript 8/22/17 Vol. II] at 64–65.)  There was no testimony presented at trial that Henning acknowledged, accepted, or responded to Johnson assigning the role of "emergency pick up."  Nor was there testimony that Johnson assigned Henning the role of "emergency pick up" at this meeting.

//

Johnson had a firearm at the meeting, and told Elima that it would be "the element of surprise." (Transcript 8/23/17 Vol. I at 40–41.)  LaForest gave Stephen and Lewis each a backpack, hammer, ski mask, and gloves, and to Scott gloves and a ski mask, to use for the robbery.  (Transcript 8/29/17 Vol. I at 106–07.)  There was no testimony presented at the trial suggesting that Henning saw the firearm or any of the materials for the robbery, nor was there any testimony even suggesting that he heard others discussing these items.

After the meeting, many of the meeting participants traveled to the Del Amo mall, planning to commit the robbery.  (Transcript 8/23/17 Vol. I at 42.)  Henning was not in this group.  (*Id*.)  At the mall, the group met with Stanley Ford and Shane Lewis.  (*Id*.) Johnson circled around the mall in his motorcycle and LaForest parked his car in another parking lot.  (Transcript 8/29/17 Vol. I at 108.)  Most of the men waited outside while Ford went inside the mall to scope out the Ben Bridge store.  (Transcript 8/23/17 Vol. I at 43.)  Johnson then told Elima he was going to make sure no police were around.  (*Id*.)  At that point, Johnson handed Elima the firearm, and Elima handed the firearm to Lewis. (*Id*. at 43–44.)  When Ford returned to the group, he reported that a girl was sitting right by the store.  (*Id*. at 44.)  After some deliberation, the robbery was called off.  (*Id*. at 45.)

Three days later, on the morning of February 29, 2016, Johnson, LaForest, Henning, Scott, Ford, Lewis, Stephen, and Germeille met at Morningside Park. (Transcript 8/23/17 Vol. I at 49; Transcript 8/29/17 Vol. I at 113, 115.)  Elima testified that Johnson said there was no need for further discussion.  (Transcript 8/23/17 Vol. I at 50.)  Stephen testified that Johnson spoke at the meeting and they discussed "the same thing we discussed on Friday . . . just making sure everybody knows their position to take."  (Transcript 8/29/17 Vol. I at 114.)  Again, Henning said nothing at the meeting and there was no testimony that he heard Johnson or anybody else say anything about the robbery.  Elima and Stephen testified that Henning was supposed to be the "emergency

pick up." (Transcript 8/23/17 Vol. I at 51; Transcript 8/29/17 Vol. I at 113, 115.) Stephen testified that LaForest told him that Henning would be an extra driver, (Transcript 8/29/17 Vol. I at 115),[1] and "to [his] knowledge" Henning was an extra driver, (*id.* at 90).[2]  Stephen also testified he did not know why an extra driver was needed.  (*Id.*)

All of the individuals from the meeting then supposedly traveled to the Del Amo mall.  (Transcript 8/23/17 Vol. I at 51; Transcript 8/29/17 Vol. I at 116.)  Although Elima testified that Henning traveled to the Del Amo mall, (Transcript 8/23/17 Vol. I at 51), he also testified that he did not know where Henning was during the robbery, (Transcript 8/24/17 at 231).  Stephen testified that Henning arrived at the meeting in his own car, a black Infiniti truck.  (Transcript 8/29/17 Vol. I at 116.)  Stephen also testified that when the men traveled to the Del Amo mall, they took the same positions as they did on Friday, which meant that Germeille drove Scott, Lewis, and Stephen, while Elima, Ford, Johnson, and LaForest traveled alone.  (*Id.* at 115–16.)  Thus, Henning presumably drove by himself from the meeting.  Elima's testimony corroborates this inference, as Elima testified that Henning drove away from the Friday meeting alone in his black Infiniti truck.  (Transcript 8/23/17 Vol. I at 52.)  There was no testimony presented at trial that Henning drove anyone from the meeting to the Del Amo mall or that Elima or Stephen saw Henning or his car ever again after the meeting.  In fact, both Elima and Stephen testified that they had no idea where Henning was during the robbery.  Elima testified that he did not know where Henning was during the robbery, (Transcript 8/24/17 at 231),

---

[1] Stephen stated in his plea agreement that LaForest explained to him that Henning was the "back up driver."  (Case No. 8:16-cr-00037-CJC-2 Dkt. 97 at 15–16.)  At his Change of Plea Hearing, on June 17, 2016, Stephen also said that LaForest had told him that Henning was an emergency pick up driver, and that he did not know this fact on his own.  (Transcript 8/29/17 Vol. II at 70–71.)
[2] Stephen testified that he had never met Henning prior to this meeting.  (Transcript 8/29/17 Vol. I at 114.)

but that he was "somewhere around" the mall, (*id*. at 216).  Stephen testified that he never saw Henning at the mall during the robbery.  (Transcript 8/29/17 Vol. II at 71.)

Germeille drove Scott, Lewis, and Stephen to the mall, where they parked next to Elima and waited for a phone call.  (Transcript 8/29/17 Vol. I at 108, 116.)  Once Ford arrived at the mall, he walked into the Ben Bridge jewelry store, then came out and gave "the green light" to go forward with the robbery.  (Transcript 8/23/17 Vol. I at 52.)  Elima did not specify who Ford gave the green light to, however, Stephen testified that "they," meaning Germeille, Scott, Lewis, and Stephen, "got a phone call from whoever was inside the mall."  (Transcript 8/29/17 Vol. I at 116.)  Once they got the phone call, Germeille dropped off the three other men outside the mall and Scott, Lewis, and Stephen went directly into the Ben Bridge jewelry store.  (*Id*.)  When the robbers reached the store, Scott pulled out a firearm, got the workers to the back of the store, and kept them on the ground.  (*Id*. at 116–17.)[3]  Lewis and Stephen followed Scott in, smashed the glass cases containing Rolex watches, and grabbed the watches.  (Transcript 8/29/17 Vol. I at 116–17.)  The time of the crime was approximately 10:36 a.m., (Dkt. 1054 [Transcript 9/12/17 Vol. I] at 55), and Stephen testified that the robbery lasted less than a minute, (Transcript 8/29/17 Vol. I at 117).

Scott, Lewis, and Stephen left the store and got into Elima's car, which was waiting outside the mall by the door.  (Transcript 8/23/17 Vol. I at 52–53; Transcript 8/29/17 Vol. I at 119.)  Elima testified that he waited three five minutes outside of the mall waiting for the robbers to come out.  (Transcript 8/23/17 Vol. I at 52.)  Elima drove to a designated switch-off spot, where the men met with LaForest, who was waiting in a different car, and gave him the stolen goods.  (Transcript 8/23/17 Vol. I at 55–57.)  Stephen testified that the switch-off spot was in another parking lot.  (Transcript 8/29/17

---

[3] Stephen testified that he did not know it was going to be an armed robbery prior to Scott pulling out the firearm.  (Transcript 8/29/17 Vol. I at 117–18.)

Case 8:16-cr-00029-CJC   Document 1126   Filed 12/20/17   Page 7 of 22   Page ID #:12425

Vol. I at 120.)  From there, Elima drove to a grocery store and stopped to pull off the paper license plate covering his real plate.  (*Id.*)  At the grocery store, Scott took the backpack from Stephen, which contained the gun, and left Elima's car to get into Germeille's car, which was behind Elima's car.  (*Id.* at 120–21.)  Elima then drove Stephen and Lewis to the South Bay Galleria, where they waited for about a minute, then drove onto the freeway back to Inglewood.  (*Id.* at 121.)  While on the freeway, the state police pulled over Elima's car while Elima, Stephen, and Lewis were inside.  (*Id.* at 122; Transcript 8/23/17 Vol. I at 58–59.)  All three men were arrested.  (*Id.*; Transcript 8/29/17 Vol. I at 122.)

At the time of his arrest, Elima had a note in his car, provided by LaForest, which contained the names and phone numbers of people who were supposed to participate in the Del Amo robbery.  (*Id.* at 62–63, 64–65.)  Henning was not listed on the note.  (*Id.*)  Neither Elima nor Stephen knew or had Henning's phone number in his phone.  (Dkt. 928 [Transcript 8/24/17] at 231; Transcript 8/29/17 Vol. II at 71.)

The Government submitted into evidence a video of the Del Amo parking lot during the time of the robbery.  (Transcript 8/24/17 at 213.)  Elima viewed the video and identified his own car and Germeille's car.  (*Id.* at 214–25.)  Stephen testified that the spot where he met up with Johnson could be seen in the video, but his actual meeting with Johnson was not captured on the video.  (Dkt. 966 [Transcript 8/29/17 Vol. II] at 133–34.)  Both Elima and Stephen testified that Henning was not in the video. (Transcript 8/24/17 at 215–16; Transcript 8/29/17 Vol. II at 10–11.)

Elima was one of the defendants charged in connection with the Del Amo robbery. Elima entered into a plea agreement, which was filed with the Court on June 27, 2016. Elima did not mention Henning in the factual basis of his plea agreement, (Transcript 8/24/17 at 222), nor in his Change of Plea Hearing on June 28, 2016, (*id.* at 226).  Elima

first mentioned that Henning was the "emergency driver" for the Del Amo robbery during a meeting with the Government on July 26, 2017.  (*Id*. at 230.)  Stephen was also charged in connection with the Del Amo robbery.  Stephen entered into a plea agreement, which was filed with the Court on June 7, 2016.  Stephen's plea agreement listed Henning amongst many others who agreed to commit the Del Amo robbery, (Transcript 8/29/17 Vol. II at 69–70), and stated therein that LaForest explained to him that Henning was the "back up driver," (Case No. 8:16-cr-00037-CJC-2 Dkt. 97 at 15–16).  At his Change of Plea Hearing, on June 17, 2016, Stephen said that LaForest had told him that Henning was an emergency pick up driver.  (Transcript 8/29/17 Vol. II at 70–71.)

The Government presented evidence that Henning was connected to a cell phone number, "the 0121 number."  Henning's moniker was "J-Stone," and the 0121 number was saved in LaForest's phone as J-Stone's number.  (Ex. 136B at 832–33 & entry 25, 29–31.)  In addition, the 0121 number was saved in Henning's girlfriend's phone as the number for "Mi Love."  (Ex. 133B at 30–41.)  Other telephone numbers associated with Henning were also stored on his girlfriend's phone as the number for "Mi Love."  (Ex. 133E.)

FBI Special Agent Kevin Boles testified that the 0121 number connected to a cell tower within the vicinity of the Del Amo mall from 10:05 a.m. to 10:40 a.m. on February 29, 2016.  (Transcript 9/12/17 Vol. I at 54–57, 61–63.)  Boles also testified that there were multiple calls between phone numbers associated with LaForest, Johnson, and the 0121 number between 10:04 a.m. and 10:43 a.m.  (*Id*. at 55–59, 61–63.)  Boles did not testify about any subscriber information for the 0121 number that would associate it with Henning, and did not perform an extraction report on the 0121 number.  (*Id*. at 102–04.)  Boles did testify, however, that between January 26, 2016, and March 1, 2016, the 0121 number most frequently connected to a cell site that was 260 yards from Henning's residence, (*id*. at 53–54), and that Henning's girlfriend frequently called the 0121

number, (Ex. 133B at 30–41).

## III.  DISCUSSION

Henning claims that his convictions rest on insufficient evidence.  On a motion for judgment of acquittal, the Court will uphold a conviction if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Reed*, 575 F.3d 900, 923 (9th Cir. 2009) (quoting *United States v. Herrera–Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001)).  "When viewing the evidence in the light most favorable to the government," the Court "may not usurp the role of the finder of fact by considering how [the Court] would have resolved the conflicts, made the inferences, or considered the evidence at trial."  *United States v. H.B.*, 695 F.3d 931, 935 (9th Cir. 2012) (quoting *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc)).  "Therefore, in a case involving factual disputes and credibility determinations," the Court "must presume ... that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Id.* (citations omitted).  "Circumstantial evidence 'can be used to prove any fact,' although 'mere suspicion or speculation does not rise to the level of sufficient evidence.'"  *United States v. Dinkane*, 17 F.3d 1192, 1196 (9th Cir. 1994) (quoting *United States v. Stauffer*, 922 F.2d 508, 514 (9th Cir. 1990)).

### A.  Count Eleven – The Del Amo Robbery

In Count Eleven, Henning was charged with aiding and abetting or conspiring with others to commit the Del Amo robbery.  The elements of a Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) are: (1) the defendant made or induced the victim to part with property by the wrongful use of actual or threatened force, violence, or fear; (2) the defendant acted with the intent to obtain property; and (3) commerce from one state to

another was affected in some way.  (Dkt. 961 (Jury Instructions – Given), Court's Instruction No. 33; Ninth Circuit Model Criminal Jury Instruction No. 8.143A.)  The jury was instructed that a defendant may be found guilty of Hobbs Act robbery even if the defendant personally did not commit the act or acts constituting the crime, but aided and abetted in its commission.  (Jury Instructions – Given, Court's Instruction No. 36.)  The elements of aiding and abetting a Hobbs Act robbery are: (1) interference with commerce by robbery was committed by someone; (2) the defendant aided, counseled, commanded, induced or procured that person with respect to at least one element of interference with commerce by robbery; (3) the defendant acted with the intent to facilitate interference with commerce by robbery; and (4) the defendant acted before the crime was completed. (*Id*.; Ninth Circuit Model Criminal Jury Instruction No. 5.1.)

The jury was instructed on the aiding and abetting theory of responsibility as follows:

> [I]t is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime.  The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit interference with commerce by robbery.  A defendant acts with the intent to facilitate the crime when the defendant actively participates in a criminal venture with advance knowledge of the crime and having acquired that knowledge when the defendant still had a realistic opportunity to withdraw from the crime.

(Jury Instructions – Given, Court's Instruction No. 36.)  The jury was also instructed as follows:

> Mere presence at the scene of a crime or mere knowledge that a crime is being committed is not sufficient to establish that the defendant committed the crime.  The defendant must be a participant and not merely a knowing spectator.  The defendant's presence may be considered by the jury along with other evidence in the case.

(*Id*., Court's Instruction No. 51.)

The evidence shows that Henning was present at one or two planning meetings for the Del Amo robbery and then in the general vicinity of the Del Amo mall during the robbery.  At most, a rational trier of fact could conclude that Henning was a knowing spectator of the crime.  This is simply not sufficient for a rational trier of fact to find beyond a reasonable doubt that the essential elements of a Hobbs Act robbery have been met under an aiding and abetting theory of responsibility.

The Government presented no evidence that Henning was an active participant in either planning meeting.  Indeed, Henning never spoke during either planning meeting.[4] There also was no evidence that Henning helped select the target of the crime or plan its commission.  There was no evidence that Henning aided the robbery by providing advice or directions.  There was no evidence that Henning counseled any robbery participant or assigned roles.  There was no evidence that Henning gave any orders or commands.  And there was no evidence that Henning encouraged any of the robbery participants, recruited them to conduct the robbery, or provided them any equipment.  Without such evidence, Henning's robbery conviction based on an aiding and abetting theory of responsibility cannot stand.  *Compare Ramirez v. United States*, 363 F.2d 33, 34 (9th Cir. 1966) (vacating the defendant's conviction for two counts regarding drug smuggling on an aiding and abetting theory of responsibility where the court found "in the record no action, by word or act, on the part of [the defendant] to make the crime succeed except [the defendant's] knowledge that a crime was to be committed, and that he was present at the scene.") *with United States v. Tibbs*, 685 F. App'x 456, 466 (6th Cir. 2017), *cert. denied*, No. 17-5099, 2017 WL 2909378 (Oct. 2, 2017) (holding there was sufficient evidence of the defendant's intent to facilitate the robbery where the government

---

[4] The cooperating witnesses' testimony was contradictory as to whether Henning was even at the first planning meeting.

-11-

presented evidence that the defendant "was present when the Vice Lords were planning the robbery, provided advice on how to commit the offense, and used some of the proceeds to pay for the principals' tattoos and a Vice Lords meeting in Chicago.")

The Government argues that the evidence demonstrates that Henning acted as an emergency pick up driver while other men committed the Del Amo robbery. Elima and Stephen did testify that Henning was the emergency pick up driver for the robbery, but the Government presented no evidence that Henning accepted or acknowledged this role. Indeed, the Government presented no evidence that Henning even heard Johnson assign him the role of emergency pick up driver.[5] *See United States v. Hill*, 464 F.2d 1287, 1289 (8th Cir. 1972) (holding that the evidence was insufficient to sustain the conviction of aiding and abetting the commission of a bank robbery where the defendant nodded in assent while present at one conversation where roles of the participants were discussed and who departed in a participant's vehicle on the day of the robbery, noting that "passive assent without affirmative action under those circumstances was insufficient. The mere fact that [the court] may speculate that [the defendant] ultimately would have participated is not enough.")

The Government also argues that the cell tower data for the 0121 number corroborates that Henning performed his role in the robbery. The cell tower data demonstrates that the 0121 number associated with Henning was in the vicinity of the Del Amo mall during the robbery. This corroborates Stephen's testimony that Henning traveled to the Del Amo mall after the February 29, 2016, planning meeting. However, neither Elima nor Stephen knew where Henning was during the robbery, and neither contacted him, or even could contact him, because they did not have his phone number. Henning was also not visible in the surveillance video that captured the meet-up spot for

---

[5] Further, Stephen testified that LaForest told him that Henning would be an extra driver, indicating that Johnson did not assign Henning's role in everyone's presence at either planning meeting.

the robbery participants.  Further, even though the cell phone data supports the Government's argument that Henning spoke with LaForest and Johnson around the time of the robbery, there is no evidence about what was discussed.

The Government's evidence only established that Henning was present during the commission of the robbery and affiliated with the robbery participants.  Evidence that Henning traveled from the meeting to the vicinity of the Del Amo mall and evidence that he spoke with LaForest and Johnson during the robbery raise the inference that he acted in a manner consistent with an emergency pick up driver.  Based on this evidence, however, a rational trier of fact could only speculate whether Henning knew he was the emergency pick up driver, accepted or understood that role, and drove to the vicinity of the Del Amo mall in order to fulfill the role.

Simply put, the evidence does not demonstrate that Henning was an active participant in the Del Amo robbery or did anything to aid and abet it.[6]  *See United States v. Andrews,* 75 F.3d 552, 555–56 (9th Cir. 1996) (holding that no rational jury could conclude that the defendant intentionally participated in a shooting where the evidence showed that the defendant and two other men accompanied the shooter to the scene of the crime, but no evidence showed that the defendant gave the shooter the gun, drove her to the scene, encouraged her to shoot, or in any other obvious way assisted her in shooting the victims.); *United States v. Pena*, 983 F.2d 71, 72–73 (6th Cir. 1993) (holding there was insufficient proof that the defendant aided and abetted the possession of cocaine with the intent to distribute where the government "presented no evidence of [the defendant's] participation in the crime other than her presence as a passenger in the car").

---

[6] The insufficiency of the evidence is underscored by the facts that Henning's name did not appear on Elima's list of Del Amo robbery participants, the two sole cooperating witnesses who testified about Henning's role never spoke with Henning about his role, and Elima did not mention Henning's role in his original plea agreement nor at his Change of Plea hearing.

1    The Government also argues that the jury nevertheless could have found Henning

2  guilty under a conspiracy theory of responsibility.  This alternative theory of

3  responsibility, however, fares no better.  The jury was instructed that a defendant may be

4  found guilty of Hobbs Act robbery based on conspiracy responsibility.  (Jury Instructions

5  – Given, Court's Instruction No. 37.)  The elements required to prove conspiracy

6  responsibility for Hobbs Act robbery are: (1) a person committed the crime of

7  interference with commerce by robbery as alleged in the count under consideration; (2)

8  that person was a member of the conspiracy charged in Count One; (3) that person

9  committed the crime of interference with commerce by robbery in furtherance of the

10  conspiracy; (4) defendant was a member of the same conspiracy charged in Count One at

11  the time the offense charged in the count under consideration was committed; and (5) the

12  offense fell within the scope of the unlawful agreement and could reasonably have been

13  foreseen to be a necessary or natural consequence of the unlawful agreement.  (*Id*.; Ninth

14  Circuit Model Criminal Jury Instruction No. 8.25.)

15

16    Henning's mere presence is insufficient to support his conviction for the Del Amo

17  robbery based on his participation in a conspiracy.  The Ninth Circuit has held that mere

18  "presence at the location of a conspiracy's activities, while the activities are taking place,

19  knowing that they are taking place, without proof of **intentional participation** in the

20  conspiracy, cannot support a conspiracy conviction . . . [O]ur line of 'mere presence'

21  cases requires acquittal in the absence of evidence of **intentional participation**."

22  *Herrera-Gonzalez*, 263 F.3d at 1097–98 (emphasis added); *see United States v. Lopez,*

23  625 F.2d 889, 896 (9th Cir. 1980) (holding the evidence insufficient to support the drug

24  conspiracy conviction of the defendant who was arrested while in the same car as two

25  major conspirators, where there was no evidence that the defendant participated in any

26  negotiations concerning, or delivery of, heroin, or that heroin was ever discussed in his

27  presence).

28

Consequently, Henning's presence at the two planning meetings and in the vicinity of the Del Amo mall during the robbery are insufficient to prove intentional participation in the conspiracy to commit the Del Amo robbery.  *See United States v. Ocampo*, 937 F.2d 485, 489 (9th Cir. 1991) (holding that mere acquaintance with a conspirator, and geographical proximity to drugs, will not suffice to prove even a "slight connection" to a conspiracy).  To convict Henning based on a conspiracy theory of responsibility, the Government had to present evidence beyond presence to prove that Henning in fact intentionally participated or agreed to join in the conspiracy.  The Government clearly failed to do so.[7]  *See United States v. Penagos*, 823 F.2d 346, 349 (9th Cir. 1987) (conspiracy conviction reversed despite evidence that the defendant, who was supposedly a lookout, was at crime scene scanning up and down the street; the government did not produce sufficient evidence that the defendant committed any act in furtherance of the conspiracy because the evidence showed that the police saw the defendant engage in alleged counter-surveillance activities only once, not during a drug sale or transfer, and without focusing on "any particular persons or activities" that a lookout would be interested in; the court noted that the "defendant's behavior was perfectly consistent with that of an innocent person having no stake or interest in drug transactions"); *United States v. Cloughessy*, 572 F.2d 190, 191 (9th Cir. 1977) (conspiracy conviction reversed, although defendant was an acquaintance of conspirators and present in a car with the conspirators during a heroin deal, because there was no direct evidence of the defendant's participation in the conspiracy and his codefendants testified that he was not a party to

---

[7] The Government argues that Henning may also held liable under a conspiracy theory of responsibility because the evidence showed that Henning was a member of the "robbery conspiracy" long before the Del Amo robbery and remained a part of it through that time, and that the Del Amo robbery was committed by some members of the conspiracy who he associated with in the days leading up to the robbery.  The Government's evidence relates to robberies other than the Del Amo robbery and robberies other than those charged against Henning.  The Court explains why this evidence does not provide a sufficient basis for upholding Henning's conviction for the robbery count in its analysis below of Henning's conviction for Count One.

the conspiracy and that he did not participate in any of the negotiations or discussions with the conspirators).

## B. Count Twelve: Section 924(c)

In Count Twelve, Henning was charged with aiding and abetting or conspiring with others, who knowingly brandished a firearm during and in relation to the Del Amo robbery.  The elements of using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a crime of violence, under 18 U.S.C. § 924(c) are: (1) the defendant committed the crime of robbery, which is a crime of violence; (2) the defendant knowingly possessed a firearm in furtherance of, or used or carried a firearm during and in relation to the crime of robbery.  (Jury Instructions – Given, Court's Instruction No. 38; Ninth Circuit Model Criminal Jury Instruction No. 8.72.)

As the Court finds there is insufficient evidence to support Henning's conviction on Count Eleven for robbery, there is also insufficient evidence to prove the first element of Count Twelve, that Henning committed the crime of robbery by aiding and abetting or as a co-conspirator.  *See United States v. Stewart,* 779 F.2d 538, 540 (9th Cir. 1985) (holding that "[t]he relation between the firearm and the underlying offense is an essential element of the crime . . .."); *United States v. Mendoza*, 11 F.3d 126, 128 (9th Cir. 1993) (same).  Again, the Government failed to present evidence that Henning said or did something to prove that he intentionally participated in the conspiracy to commit the Del Amo robbery during which a firearm was brandished or that he said or did anything to aid and abet that robbery.

//
//
//

### C. Count One: Conspiracy to Commit Hobbs Act Robbery

In Count One, Henning was charged with conspiracy to interfere with commerce by robbery in violation of 18 U.S.C § 1951(a).  The elements for conspiracy to interfere with commerce by robbery were as follows: (1) beginning on an unknown date and ending no later than or about June 3, 2016, there was an agreement between two or more persons to commit the crime of robbery; (2) the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose; and (3) the robbery contemplated by the agreement would affect interstate or foreign commerce in some way.  (Jury Instructions – Given, Court's Instruction No. 28; Ninth Circuit Model Criminal Jury Instruction No. 8.20.)  The jury instructions in this case specifically instructed that, "[i]t is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another.  You must find that there was a plan to commit **at least one of the crimes alleged in the indictment** as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit."  (*Id*., Court's Instruction No. 31 [emphasis added].)  The jury was also instructed that, "[y]ou are here only to determine whether each defendant is guilty or not guilty of the charges in the Third Superseding Indictment.  The defendants are not on trial for any conduct or offense not charged in the Third Superseding Indictment."  (*Id*., Court's Instruction No. 25; Ninth Circuit Model Criminal Jury Instruction No. 3.10.)  The jury was also instructed that, "[a] separate crime is charged against one or more of the defendants in each count.  The charges have been joined for trial.  You must decide the case of each defendant on each crime charged against that defendant separately."  (Jury Instructions – Given, Court's Instruction No. 26; Ninth Circuit Model Criminal Jury Instruction No. 3.13.)

The Government argues that the Court should consider all of the evidence introduced at trial to determine whether there was sufficient evidence to support

Henning's convictions.  The Government would have the Court consider evidence related to robberies that Henning was acquitted of committing, specifically the robbery of Rolex Boutique Geary's.  To support this argument, the Government cites *United States v. Powell*, 469 U.S. 57 (1984) and *United States v. Hart*, 963 F.2d 1278 (9th Cir. 1992).  In both cases, a criminal defendant moved for acquittal of a conviction on the grounds that the jury's verdict was inconsistent.  In *Powell*, the defendant was acquitted of both conspiracy to possess cocaine with the intent to distribute and possession of cocaine, but convicted of using a telephone in "committing and in causing and facilitating" the alleged conspiracy and possession.  *Powell*, 469 U.S. at 59–60, 67.  In *Hart*, the defendant was convicted of conspiracy to distribute cocaine, but acquitted of distributing or aiding and abetting the distribution of cocaine.  *Hart*, 963 F.2d at 1280.  The Government cites *Powell* for the unremarkable proposition that sufficiency of the evidence review "should be independent of the jury's determination that evidence on another count was insufficient."  *Powell*, 469 U.S. at 68.  The Government cites *Hart* to demonstrate that the Ninth Circuit considered the evidence underlying the acquitted count for distributing or aiding and abetting the distribution of cocaine when it reviewed the sufficiency of the evidence to support the defendant's conviction for conspiracy to distribute cocaine.  *Hart*, 963 F.2d at 1282.

This case presents fundamentally different circumstances from *Powell* and *Hart*. In those cases, the defendant challenged as inconsistent a guilty verdict on one charge when the jury acquitted on a *different* charge.[8]  Those courts held that the jury's guilty verdict in such cases is insulated from review because courts are reluctant to inquire into the jury's rationale and the Government is unable to seek review of acquittals.  *Hart*, 963

---

[8]  The Government also cites *United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015), *cert. denied*, 137 S. Ct. 628 (2017), where the defendant challenged his RICO conspiracy conviction on the basis that it was inconsistent with his acquittal of the related substantive offenses for which he was charged.  Like *Hart* and *Powell*, the defendant in *Christensen* challenged the jury's verdict where they found guilt on one charge and acquitted the defendant of a *different* charge.

F.2d at 1281; *Powell*, 469 U.S. at 64–65.  Here, a defendant is not challenging a guilty verdict as being inconsistent with a jury's verdict of acquittal.  To the contrary, the Government is trying to do an end-run around a jury's verdict of acquittal.  Henning was charged with four Hobbs Act robberies based on an aiding and abetting theory *and a conspiracy theory of responsibility*.  The jury acquitted Henning of the robberies at Rolex Boutique Geary's, Los Angeles, Manya Jewelry, Woodland Hills, and Westime, West Hollywood.  By acquitting Henning of these three robberies, the jury specifically acquitted Henning of *conspiracy to commit those robberies*.  To now find Henning guilty of conspiracy on Count One based on these three robberies would completely contradict the jury's verdict.  Due Process prohibits such an unjust result.  *See United States v. Rivera*, 411 F.3d 864, 866 (7th Cir. 2005) ("Once the jury has spoken, its verdict controls unless the evidence is insufficient or some procedural error occurred."); *Harris v. Rivera*, 454 U.S. 339, 346 (1981) (recognizing "the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons"); *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1201–02 (9th Cir. 2000) (when reviewing for sufficiency of the evidence, "any conflicts in the evidence are to be resolved in favor of the jury's verdict").

The Government also argues that the Court should consider evidence of Henning's alleged involvement in the attempted robbery at Ben Bridge Santa Monica.  This robbery was alleged in Count One of the Third Superseding Indictment as an overt act in furtherance of the conspiracy.  At trial, the only evidence concerning Henning's alleged involvement in this attempted robbery was the testimony of another cooperating witness, Darrell Dent.  Dent testified that after the attempted robbery, Henning told him that the participants were from the Bounty Hunters, a Bloods sect from Watts, California, and that Johnson told him that Henning "got the players," or robbery participants.  (Dkt. 1048 [Transcript 8/31/17 Vol. I] 106.)  The Government argues that this testimony proves that Henning recruited the participants for the attempted robbery in Santa Monica.  The Court disagrees.  Dent's testimony, at best, proves that Henning had knowledge of and an

affiliation with the alleged participants in the attempted robbery.  It does not prove

beyond a reasonable doubt that he intentionally participated as a recruiter in the

attempted robbery in Santa Monica.  Specifically, Dent never testified that Henning told

him that he recruited the alleged participants, and, more importantly, neither Dent nor any

other witness testified at trial who the participants were that were recruited, how they

were recruited, where they were recruited, or when they were recruited.  Much more is

required to prove beyond a reasonable doubt that Henning was a co-conspirator involved

in the attempted robbery in Santa Monica.  *See Cloughessy*, 572 F.2d 190; (*see* Jury

Instructions – Given, Court's Instruction Nos. 36, 51.)


     The Government also argues that the Court should consider evidence of Henning's

involvement in robberies that were not charged against any defendant in the Third

Superseding Indictment and evidence about Henning's involvement in activities with no

connection to any specific robbery.  (Dkts. 970 [Transcript 8/31/17 Vol. II] at 50–51,

1047 [Transcript 8/30/17 Vol. II] at 128–29.)  Because none of this evidence is related to

a robbery charged against Henning, the Court will not consider it as evidence of the

conspiracy charged in Count One.  It is a well-established principle of criminal law that a

defendant cannot be convicted for any uncharged conduct or offense.  *See United States

v. Ward*, 747 F.3d 1184, 1191 (9th Cir. 2014) (holding that it was reversible error to

permit the jury to convict on counts of aggravated identity theft against two victims

named in indictment based on evidence presented at trial of uncharged conduct against

identity-theft victims not named in indictment, noting that the court "needs some way of

assuring that the jury convicted the defendant based solely on the conduct actually

charged in the indictment.  Typically, that assurance will be provided by jury instructions

requiring the jury to find the conduct charged in the indictment before it may convict.");

(Jury Instructions – Given, Court's Instruction Nos. 25, 26; Ninth Circuit Model Criminal

Jury Instruction Nos. 3.10, 3.13.)

1    The bottom line is that the Government's evidence only showed that Henning was

2    present at the planning meetings and in the vicinity of the Del Amo mall during the

3    robbery.  To be sure, these facts may give rise to some suspicion that he was involved in

4    the conspiracy to commit the Del Amo robbery, but they do not prove it beyond a

5    reasonable doubt.  The Court is left to speculate that Henning actually participated in or

6    joined in the conspiracy and, if he did participate or join in it, how he did so.  Without

7    any evidence that Henning said or did anything at the planning meetings or during the

8    robbery to participate in its commission, the Government's evidence adds up to mere

9    presence and nothing more.  Henning's presence, without any affirmative action or

10   statements on his part, is simply insufficient as a matter of law to support his conviction

11   for conspiracy.  Therefore, the Court must set it aside.

12

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

## IV.  CONCLUSION

For the foregoing reasons, Defendant Henning's motion for acquittal is GRANTED.[9]  Defendant Henning's motion for release from custody, (Dkt. 1064), is DENIED as moot.

DATED:      December 20, 2017

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[9] Henning has also filed a motion to dismiss the case for prosecutorial misconduct or, in the alternative, for new trial.  (Dkt. 1104.)  Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  A motion for a new trial is "directed to the discretion of the district judge," and should be granted "only in exceptional cases," *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981), such as where "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred," *United States v. Alston*, 974 F.2d 1206, 1211–12 (9th Cir. 1992).  Justice demands that Henning be granted a new trial as the Government has failed to present sufficient evidence to prove Henning did anything to participate in or conspire to commit the Del Amo robbery.  The Court conditionally **GRANTS** Henning's motion for new trial.

# JS-3

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: SA CR 16-029(B)-CJC |
| Plaintiff, | ORDER DISMISSING UNDERLYING INDICTMENTS AND/OR CHARGES PERTAINING TO JUSTIN HENNING |
| vs. |  |
| DARRELL DENT, et al., (3) JUSTIN HENNING Defendant. |  |

For good cause shown, IT IS HEREBY ORDERED THAT:

Defendant's ex parte application for an Order Dismissing the Underlying Indictments and/or charges is GRANTED.  It is hereby ordered that all underlying indictments and/or charges pertaining to Justin Henning be dismissed.

DATED:  December 22, 2017

_____
HONORABLE CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

1